Good morning, Your Honors, and may it please the Court, my name is Laura Hill and I'm appearing on behalf of Plaintiff Appellant William Rouser. I would like to request three minutes for rebuttal. Please watch the clock. Thank you. This appeal arises out of the defendant's ongoing failures to comply with the binding consent decree that has been in place since 2011. The consent decree protects Mr. Rouser's rights to practice his religion while incarcerated and in the custody of the defendants. Among other things, it guarantees him access to various religious artifacts such as candles, incense, a fire pit, an altar and an altar cloth that are essential for his use in group worship. Over the last 13 years, unfortunately, the defendants have repeatedly failed to comply with this consent decree, nor has there been any meaningful enforcement. In fact, in 2016, this Court reversed a minute order that vacated the consent decree on the grounds that the defendants had not been in substantial compliance with all of its terms. The Court also at that time warned the District Court that its handling of the case and its failure to enforce the consent decree raised significant due process concerns and it criticized the District Court for its insouciance. These problems have continued today. Mr. Rouser is currently incarcerated at Mule Creek State Prison, and since he was transferred there in 2021, he has repeatedly notified the District Court that the defendants continued to be in breach of the consent decree, including most recently by filing the motion for preliminary injunction that is at issue on this appeal. The District Court denied that motion, finding that he had not established any of the winter factors for preliminary relief, injunctive relief. That ruling was filled with factual errors and legal errors, and we explain them in detail in our brief. I'm not going to go into all of them, but I would like to highlight some of the clear errors that undergirded the Court's ruling. First, the District Court was clearly wrong when it found that Mule Creek does not allow prisoners access to open flame for security reasons. The record, including evidence presented by the defendants, shows the exact opposite. According to a declaration... So, I have difficulty following Mr. Eshelman's declaration, and perhaps you could help me. Let's talk about the Indians for a second. What is the sequence of events in the Indian celebration? Take it from the downbeat, from when they walk in. All right. Okay, so the Native American worshippers have a separate area that they're allowed to use. Okay. Based on the record and based on the Eshelman declaration, they congregate in a group, or they can congregate in a group, around a fire pit where they're allowed to light a fire. No, no, no, no, no, no. Stop. You're going too fast. Okay. As I understand it, one Indian goes to the fire, starts the fire, and warms the rocks. The rocks, warm rocks, are the basis of the celebration. Right? Then those rocks, once warmed, allows the other group of Indians, or the group of Indians, to get around the fire, but the fire is out. The rocks are hot. Do I have it wrong? Respectfully, Your Honor, I believe you do. That is what the district court found. But the Eshelman declaration, that sentence in full, the district court selectively quoted it. And it says that the, let me make sure I'm quoting this in full. It says in full, the fire pit is not used by the entire Native American congregation except, and this is the key phrase, except at the beginning of the ceremony, when the congregation offers prayers and or medicine to the fire. So that activity of congregating at the beginning and offering prayers and or medicine to the fire, that's where this comes from. So what about the other description of one person heating the rocks? Do we forget about that? That appears to be after they offer prayers and or medicine to the fire. So they offer, in your view, all the Indians get around the fire, the fire is lighted, and all the Indians are there, and then after the fire is lighted, what happens to the rocks? My understanding is that the rocks are then used in the sweat ceremony. So the rocks are already there? Yes. All right, so the fire is heating the rocks when all the Indians are around, and then they go away, and then one Indian does what? Tends to the fire to make sure that the rocks continue to be heated. Now, I do want to clarify that. So the rocks are heated, and the Indians go away, they don't worship the rocks anymore? They use the rocks in the sweat ceremony itself, but I do want to clarify that this is all conducted in the same area. So the fire and the sweat ceremony, the lodge, they're all in the same space, and there's no real meaningful separation there. Could I ask, again, looking at the Eshelman Declaration, there's a sentence that you read that at the beginning of the purification ceremony, the congregation offers prayers and our medicine to the fire. But then the very next sentence says, the Native Americans do not use the fire pit or access open flame during their ceremonies, which seems to be directly contradictory to your statement that they are using flame at the beginning of the ceremony. So how do we understand those two sentences together? Frankly, Your Honor, they're very hard to reconcile, but it is absolutely correct that the land eshelman said that at the beginning of the ceremony, the entire congregation offers prayers and our medicine. I would also point, Your Honor, to a policy for the June 2021 Religious Programs Departmental Operations Manual Supplement at ER 49. This was attached to the Eshelman Declaration. That policy provides that inmates on a heat risk list at Mule Creek are not allowed access to the ceremony, and they can be provided an alternative ceremony without fire. Ms. Hill, as I understand the argument so far, you're taking the position that all the Indians get around the fire while it's an open fire. That's correct. Eshelman says they don't. After he says the part that Junot Jakuda just quoted. Now, let's say that my interpretation is that there's one open fire. All the Indians and the other Eshelman says all the Indians don't get around the open fire. Eshelman is contradictory, right? If the district court judge can choose one of those two to make a finding, how do we reverse him on the clear error standard of Hinkson? The clear error was from not considering or quoting all of the evidence here. I would also note that Lance Eshelman. But he quoted all the evidence. He just chose one of the two contradictory Eshelman statements. Well, he ignored part of the Eshelman statement, which is clear error under this court. He ignored it. He chose between saying open fire, yes, crew, and open fire, crew, no. If Your Honor would like to reconcile the two sentences, which I think is what you're asking me to do, the paragraph that you're quoting tries to be – it seems to be attempting to make a distinction between the ceremony, that is the purification, sweat ceremony, and what is done before. That is how I read the second sentence. And perhaps that addresses Justice Ginsburg. And if that's a rational inference from the evidence, right, it's not clear error. There is clear error because – I know you're saying you have clear error, but why is a rational inference from one sentence in Eshelman clear error? Just because a rational inference from another sentence might go the other way. So there are two different interpretations that could be put on Eshelman's declaration. One for you, one for them. Your Honor, it's clear error to ignore evidence in the record. The district court selectively exerted the record here. Did you say he ignored it? He chose. Did the district court address that sentence at all? Did he say anything about the language that, except at the beginning of the purification ceremony when the congregation offers prayers and a message of the fire, did he quote it or did he address it? He did not address it. Okay. Did he quote it? No, I don't believe so. Okay. And you say there's other evidence in the record indicating that fire is allowed in certain circumstances and not allowed in others. You're talking about this heat risk entry. Is that correct? Yes, and there's the heat risk policy. There's the September 2021 Outdoor Religious Grounds policy, which Mr. Rauser attached to his reply. He also attached a similar policy from 2020 to his motion. And that policy makes clear that the Outdoor Religious Grounds is not allowed to have a fire pit, but the Native American grounds are. So those are different things. How do the Native Americans conduct theirs? Don't they have somebody that just lights a fire and then uses that fire to heat rocks and worship services over the hot rocks? Is that what it is? Apologies, Your Honor.  And you take them over a short distance to a separate area, but within the same general area, to conduct their sweat lunch ceremonies. But at the beginning of the ceremony, the whole congregation is gathered around the open fire. Is that correct? That's correct. Okay. So this is a critical error because the defendant's entire justification for depriving Mr. Rauser of his rights under the consent decree is that all inmates at Mule Creek were prohibited from having any fire or flame, and that's simply not true. Now, even if we set aside the issue of group access, at least one Native American inmate indisputably had access to fire during these ceremonies. So that takes the district court's justification out for the denial of the consent decree. Did Mr. Rauser argue that the entire Wiccan congregation needed access to the flame, or was he just asking for himself? So the consent decree applies to Mr. Rauser, and it protects his individual rights. Part of those rights are to engage in group worship, and so to protect his rights as an individual under the consent decree, the Wiccan congregation would need access to the fire. I do want to clarify that he's only entitled to a 12-inch fire. It's not a huge fire. It's not a bonfire that you'd see, like, on the beach or anything like that. This is a small fire. If you want to save time for rebuttal, we spent a lot of time asking you about this fire issue. I did want to save time for rebuttal. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Deputy Attorney General George Morris, on behalf of the defendants and the tellies. What we are dealing here with is a preliminary injunction, which is an extraordinary and drastic remedy that should only be issued if the plaintiff meets its high burden of establishing a clear showing of entitlement to relief. And the denial of this preliminary injunction should not be overturned unless the court abuses discretion by either applying the wrong legal standard or by relying on clearly erroneous factual findings. Can the plaintiff pursue this now, or is the whole case dismissed? Well, that's a good question, Your Honor. The consent decree is still live. So what we're talking about here is a preliminary injunction that was filed three years ago. Likely the evidence is stale at this point. But Mr. Rausser does have the live consent decree, which, if he is still suffering any harm, which he hasn't filed any breach motions since the preliminary injunction, but if he does still have issues, he can, in fact, raise them. But it should be done in a properly filed motion with all the claims that he wants to bring, with all the evidence that he wants to include, and seeking relief that is proper, which he didn't do here. So this isn't the end of the road here. And that is important because, again, what we're dealing with is a one-page preliminary injunction motion, which had very sparse evidence and which asked for relief that the district court couldn't grant, which would be to reinstate a previous preliminary injunction when that had already been substituted by the consent decree. Everyone seemed to understand that he was asking for enforcement of the consent decree. Well, I think, Your Honor, everybody understood that what he was saying was that the consent decree was breached and that because the consent decree was breached, he didn't want the consent decree anymore. He wanted instead to reinstate the preliminary injunction. That is the request of relief. And so I do think that while people did, excuse me, that while the court and the parties did address a potential breach, he did ask for the relief of reinstating the preliminary injunction, which the district court just can't do. So with respect to the issue of fire, which I know that a lot of time was spent on, I do think that the Edgelwind Declaration is clear that at the beginning, what happens is one inmate and one inmate only heats rocks over a fire. Then those rocks are transferred and used for the group ceremony. Now, we understand that the Declaration says that at the beginning, the Native Americans offer prayer to the fire. But as Your Honors have pointed out, the very next sentence. Right, but what do we do with that sentence? So the sentence says, the fire pit is not used by the entire Native American congregation. That's your position. But then there's an exception. He says, except at the beginning of the purification ceremony, which says, at that point, the fire pit is used by the entire Native American congregation. When the congregation offers prayers and are present to the fire, that's a pretty strong statement saying that there's an exception to the rule, that the fire pit is not used by the entire Native American congregation. So it's hard to understand how that sentence corresponds to the next sentence. Judge McKenna suggests you could make a rational inference either way. You could just choose between the two. Do you have another way of reconciling those? Or why isn't it error for the district court not even to acknowledge the exception language? Well, I think there is, obviously, another interpretation. What we are dealing with here is abuse of discretion. So as Judge Payne pointed out, the- Right, the clear error of fact. The clear error of fact is abuse of discretion. So we're trying to figure out whether there was such a clear error in not giving any weight to a fairly clear statement that the entire congregation uses the fire at a certain point in the ceremony. I don't believe that that is a clear error to, again, weigh the different statements, which was first, only one Native American attended the fire to heat rocks. Then, another very clear statement that no Native American, that congregation does not access the fire pit or have access to the open fire, but instead the heat is used from the rocks that were previously heated. So, you know, we do have- Did the district court address the sentence that we've been talking about? The district court mentioned the first part of the sentence. And I think that what- I believe the way that he interpreted it was, you know, what I said offered prior to the fire, that is the heated rocks that were previously done because the very next sentence clarifies that they don't have access to open flames, and instead the heat is generated from the fire. So I think that that was- So it refers to fire and not heated rocks, which you're saying that the- because they clearly used the word heated rocks earlier in that paragraph. Well, it was before, Your Honor, where one Native American heated the rocks to be used for the ceremony, and then another sentence that says that the Native Americans don't have access to the fire pit or open flame, but only the heated rocks for the ceremony. So, again, I think that we're in a situation where, as Judge Bia noted, while there could be potential interpretations, the district court chose this one, and it is not illogical or implausible, which is what is necessary for clear error. So the court gets abuse of discretion for analysis. Let me ask you something. Did Mr. Rausser here, did he file an affidavit or any proof as to what the practice was of the Indians? Not at all, Your Honor. As a matter of fact, he just says they allowed to burn a fire. No other- He just says in his complaint, or does he say in the declaration? He says in his declaration. I don't believe he actually states in his declaration anything about the Native American use of fire or the fire pits. And so, again, we have no evidence coming from Mr. Rausser about Native American use. Do you oppose a remand for an evidentiary hearing to find out just what is Indian practice? I do oppose that, Your Honor, because, again, here we're dealing with a three-year-old preliminary injunction motion, which was a one-page motion that just was not supported by the evidence, and Mr. Rausser did not meet his burden. The district court did not abuse its discretion in making- there is no argument that the district court applied the correct legal standard, and there is no abuse of discretion here because the district court's findings were not illogical or plausible. So we don't- we can't- this court can't affirm the denial, and Mr. Rausser still has the ability under the consent decree to bring a motion if, in fact, he is still- believes that there is a live controversy or if currently his rights are being denied under the consent decree. Can we make a video of the Indian celebration? Well, Your Honor, I'm sure there's safety and security issues that would be involved in that, and so I think that- well, I don't know if, frankly, Your Honor, if that would be allowed in the prison setting, but I do think that he might be able to observe or otherwise gather the evidence needed. And so just to quickly touch on other points that were raised by counsel, she stated that all of these religious articles are guaranteed under the consent decree, and they are not. Again, we see that the access to flame or fire, candles or a fire pit, it is all subject to institutional safety and security concerns as well as applicable fire regulations. And we see here that Mill Creek does have such regulations that do not- does not allow open fire. The thing that- let's say that we think that the Native American congregation does have access to fire. Doesn't that undercut the district court's reasoning about the least restrictive means and whether alternatives are available? How would that affect our analysis? Well, I think, Your Honor, that the district court's discussion of the First Amendment and the RLUIPA, frankly, was unnecessary. As we've stated in our briefing, these are all issues that Mr. Rausser had raised previously before. He litigated them, and they were settled and became a part of the consent decree. So the district court was not required to go back and do a RLUIPA or First Amendment analysis. So are you saying that the consent decree would be a race judicata even as to new complaints? No, Your Honor. If, in fact, he has a completely different First Amendment or RLUIPA claim, he can bring that claim, certainly. But everything that he brought in this preliminary injunction motion was previously covered by the settlement agreement and the eventual consent decree. So for those claims, I really doubt Mr. Rausser is arguing that every time he believes that his First Amendment or RLUIPA rights are being violated by something that's covered from the consent decree, that he would have to raise and prove new claims. And for the same reason, there's no reason why the district court had to perform this analysis. The issue is about whether or not the consent decree was breached based upon the claims that Mr. Rausser actually made in his preliminary injunction motion. Moving on to other issues that were raised in terms of denial, Mr. Rausser claims that he was denied an altar, an altar cloth, and incense. But besides these bare allegations, there is no evidence to support these claims. The preliminary injunction motion, again, just simply states this has been denied. But the prison is not required to provide these items to Mr. Rausser. He must procure them himself. And there is no allegations and no evidence in the preliminary injunction papers that he was denied the ability to order the items or that he had bought the items but did not receive them from the prison. The evidence in the preliminary injunction record is that the defendants have allowed Mr. Rausser to access and possess these religious items that were afforded to him under the consent decree. So under these circumstances, the court did not abuse its discretion by finding that Mr. Rausser's altar, altar cloth, and incense claim was not a breach of the consent decree. He has to pay for it or somebody? Yes. So it has to be donated or he has to come up with the money himself. That's true in the other religions? It is true overall, and that's why I believe it was made clear in the consent decree. Oh. Why was it made clear in the consent decree that the state had no obligation to obtain these items for Mr. Rausser? And, again, there's just no allegation in the record of the PI that Mr. Rausser actually did buy these items or attempted to buy them and they were denied by the prison. So, yeah, in summary, again, we are dealing with a, sorry, a preliminary injunction motion where Mr. Rausser had a very high standard to show, to make a clear showing that he was entitled to relief. And under this record, he just did not do that. And the district court did not abuse its discretion and make any implausible or illogical factual findings. This court can affirm the decision, and Mr. Rausser still has the ability to raise his claims in the future if, in fact, he still has claims. If there's no other questions from your honors, I ask that the court affirm the judgment of the district court. Thank you. We have some time for rebuttal. Thank you. Three points in rebuttal, your honors. First, this court can consider RLUIPA in the First Amendment. It is undisputed by the parties that the consent decree should be interpreted according to the intent that the parties held at the time it was executed and its plain meaning. The defendant's position would require this court to find that Mr. Rausser, his counsel, and the district court all blessed a consent decree that somehow reduced Mr. Rausser's rights below the floor set by RLUIPA and the Constitution. The opposing counsel seems to be saying that Mr. Rausser just can't bring his challenges because they're covered by the consent decree because of res judicata standing or whatever other theory. He is unquestionably sustaining an ongoing injury in this case. So, at a minimum, RLUIPA and the First Amendment are an interpretive tool for understanding the intent of the parties. Second, it is clear error to simply ignore record evidence. That's in the Martinez-Gonzalez case we cited in our brief. In that case, this court reversed when the district court ignored evidence that went counter to its factual findings. That applies here. Third, I think an evidentiary hearing would be appropriate if your honors are not inclined to just reverse. At this point, I think you're right that nobody really knows what's going on in the Emule Creek. We have some evidence in the record, the evidence we cited, that shows, in our view, Native American inmates, at least one, we believe the group, have access to fire. Has an evidentiary hearing been requested in this matter? It has not, but because it was raised, I think it would be a possibility for your honors to consider. In terms of the alter and alter cloth, allegations, opposing counsel said that there's no evidence or allegations in the preliminary injunction motion that Mr. Rouser had not received an alter cloth. He did allege that in his reply brief, so in conjunction with his statement, I need an alter and an alter cloth to practice, his reply brief said, I have been denied that. There was also evidence that he submitted with the prior breach of contract motions that he thought were still pending in the district court that showed he had tried to order an alter cloth for $32, and the defendants had refused to provide it to him through the mailroom. I think it's also important here to note what evidence the defendants have provided in terms of the alter and alter cloth. I'll just make this one last point. That's paragraph 11 of the Eshleman Declaration. Mr. Eshleman simply says that to the best of his knowledge, that's the start of paragraph 11, Mr. Rouser has been provided with everything he's required or entitled to under the consent decree. That is not a statement based on personal knowledge, and it's not sufficient to carry the government's burden. And if you have no further questions. Is it your position the government must pay for and provide incense and alter cloth? No, Mr. Rouser is required to procure those himself at his own cost. It's our position that the defendants and the government should not interfere with his access to ordering those items. If there are no further questions, we request that this court reverse and remand for further proceedings. Thank you. We thank both sides for their arguments. The case of William Rouser v. Theo White in GW Needs is submitted. We thank you for taking the pro bono appointment. The court appreciates it.
judges: Siler, BEA, IKUTA